```
                  United States District Court
                    District of Massachusetts
 _____
                               )
PROMERA HEALTH, LLC,           )
                               )
        Plaintiff,             )
                               )
        v.                     )   Civil Action No.
                               )   15-12888-NMG
VIREO SYSTEMS, INC.,           )
                               )
        Defendant.             )
 _____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This is a trademark and trade dress infringement case involving the marketing and distribution of certain creatine hydrochloride ("C-HCl") dietary supplements.

Pending before the Court is defendant's motion to dismiss the complaint or, in the alternatives, to transfer the case to the District of Nebraska or stay the case. For the reasons that follow, the motion will be allowed, in part, and denied, in part.

**I.   Background and procedural history**

The following factual allegations are taken from the complaint for the purpose of resolving the motion to dismiss.

   **A.   The parties and their background**

Plaintiff ProMera Health, LLC ("ProMera") is a Massachusetts limited liability company and, although it is the

-1-

residency of such an entity's members and not its place of business that controls personal jurisdiction, plaintiff simply reports that its principal place of business is in Massachusetts.

Defendant Vireo Systems, Inc. ("Vireo") is a Tennessee corporation with its principal place of business in Tennessee. Vireo is a manager and member of ProMera. It and a third-party formed ProMera in 2007 in order to develop, market and distribute dietary supplements for use by athletes. The supplements contain creatine hydrochloride ("C-HCl") and are marketed under the brands of Vireo's CON-CRET trademarks.

From late 2007 to 2011, ProMera and Vireo operated under an oral agreement whereby Vireo manufactured C-HCl for CON-CRET products and ProMera was the exclusive distributor of those CON-CRET products.

On March 22, 2011, ProMera and Vireo entered into a Trademark Assignment Agreement that conveyed from Vireo and its president Mark Faulkner ("Faulkner") to ProMera

> all right, title and interest in and to the CON-CRET and CON-CRET REINFORCED trademarks, together with the goodwill symbolized by the Trademarks and their registrations and application thereof.

(internal quotation marks omitted). The parties also entered into a Product Development and Marketing Agreement ("PDMA") that replaced the oral agreement and designated ProMera as the sole

applicant and owner of any trademarks for any other related products.

ProMera invested substantial time and resources in the development and marketing of CON-CRET brands and products. It designed product labels and packaging materials with an

> alternating yellow and black color scheme reminiscent of a construction tape as an homage in the minds of consumers to "concrete."

That yellow and black scheme purportedly is trade dress that is non-functional and distinct from the packaging scheme used by its competitors.

In 2014, ProMera entered into negotiations with supplement producer Kaged Muscle in order to have Kaged Muscle promote the CON-CRET brand and use CON-CRET products in its RE-KAGED supplements. ProMera helped to design labels for RE-KAGED that displayed the CON-CRET REINFORCED trademark at the "bottom center" of the labels and included CON-CRET products in the list of ingredients. Those negotiations were unsuccessful, however, after Faulkner informed ProMera that 1) he did not approve of the proposal with Kaged Muscle and 2) Vireo would not discount the price of the C-HCl sold to ProMera.

### B. Vireo's alleged conduct

In early February, 2015, Vireo notified ProMera by letter that it was unilaterally terminating the PDMA and filing an action against ProMera in Tennessee state court for breach of

-3-

contract. According to ProMera, Vireo then began developing a product to compete directly with ProMera's products. Vireo also filed trademark applications for its new C-MENT and C-MENT FORTIFIED trademarks which, ProMera claims, are intentionally and confusingly similar to its CON-CRET and CON-CRET REINFORCED trademarks.

In late February, 2015, ProMera commenced a separate action in this Court against Vireo ("the 10595 action") and sought, <u>inter alia</u>, a declaratory judgment that ProMera's use of the CON-CRET trademarks did not infringe or violate Vireo's rights. Vireo, in turn, filed suit in the District of Nebraska against ProMera for patent and trademark infringement ("the Nebraska action").

In May, 2015, ProMera learned that Kaged Muscle intended to use Vireo's C-MENT products rather than ProMera's CON-CRET products in its RE-KAGED supplements. ProMera insists that Kaged Muscle made that decision after Faulkner "secretly negotiated a discounted arrangement" with Kaged Muscle whereby Vireo would sell C-HCl powder to Kaged Muscle at a discount as long as Kaged Muscle used Vireo's products in the RE-KAGED supplements and included the C-MENT trademark on the product labels.

Kaged Muscle placed an advertisement online for RE-KAGED supplements that referenced C-MENT in its promotional text and

included CON-CRET in the list of ingredients. That advertisement allegedly confused consumers into believing that there was an affiliation, association or sponsorship between products bearing the CON-CRET trademarks and products bearing the C-MENT trademarks.

According to ProMera, Vireo now "intends to directly market, promote, advertise, and sell products" using the infringing C-MENT trademarks to the same consumers that ProMera targets. To that end, Vireo purportedly solicited the same label designer that ProMera used to develop the CON-CRET labels in order to create labels for its C-MENT products. That label designer mistakenly sent proofs of the proposed C-MENT labels to ProMera instead of to Vireo. ProMera proffers the designer's mistake as evidence that consumers will confuse Vireo products bearing C-MENT labels with ProMera products bearing CON-CRET labels.

ProMera claims that the proposed C-MENT labels 1) are intentionally patterned after the CON-CRET labels with respect to the color scheme, formatting and font, 2) infringe the CON-CRET trademarks by promoting C-MENT products as "The Next Generation [of C-HCl products] . . . FROM THE INVENTORS OF CON-CRET," 3) use the CON-CRET trademark as a false, deceptive and misleading identifier of source and origin and 4) confuse and mislead the public into believing that C-MENT products are new

-5-

C-HCl products offered by, affiliated with or associated with ProMera. ProMera submits that Vireo's plans to advertise the C-MENT products to the same bodybuilding and fitness enthusiast consumers and to use the same media channels increase the likelihood of consumer confusion of C-MENT products with CON-CRET products.

ProMera further alleges that Vireo intends to engage in counterfeiting by selling, under the C-MENT brands, the remaining inventory of C-HCl that Vireo refused to deliver to ProMera for use in CON-CRET products.

### C.    Procedural history

In July, 2015, ProMera filed the complaint in this action alleging that Vireo violated the federal Lanham Act by using or engaging in 1) trademark infringement under 15 U.S.C. § 1114(1) (Count 1), 2) false designation of origin, false description or representation and unfair competition under 15 U.S.C. § 1125(a) (Count 2), 3) counterfeiting under 15 U.S.C. § 1127 (Count 3) and 4) trade dress infringement under 15 U.S.C. § 1125(a) (Count 4). Vireo moved to dismiss the complaint or, in the alternatives, to transfer or stay the case.

In October, 2015, while Vireo's motion remained pending in this Court, the District Court for the District of Nebraska ("the Nebraska Court") found that it had proper venue over the

Nebraska action and that transfer of that case to the District of Massachusetts was unwarranted.

In January, 2016, this Session of this Court transferred to the District of Nebraska ProMera's trademark claim in the 10595 action, which sought a declaratory judgment with respect to the ownership of the CON-CRET trademarks. It did so in the interest of judicial efficiency and to avoid duplicative proceedings.

## II. **Motion to dismiss**

### A. **Legal standards**

A plaintiff faced with a motion to dismiss under Fed. R. Civ. P. 12(b)(1) bears the burden of establishing that the court has subject matter jurisdiction over the action. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To assess whether the plaintiff has met its burden, the court must liberally construe the complaint by treating all well-pled facts as true and drawing all reasonable inferences in the plaintiff's favor. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The court may consider "whatever evidence has been submitted, such as the depositions and exhibits submitted in the case." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the

merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011).  Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 679.

**B. Application**

    **1.  Vireo's motion to dismiss for lack of jurisdiction**

Counts 1, 2 and 4 of the complaint allege violations of 15 U.S.C. §§ 1114(1) and 1125(a) of the Lanham Act.  Section 1114(1) prohibits the unauthorized use in commerce of a trademark 1) in connection with the sale, offering for sale, distribution or advertising of any product or 2) in a manner that is likely to cause confusion, mistake or deception. 15 U.S.C. § 1114(1)(a).

Section 1125(a) prohibits the use in commerce of a trademark, a false designation of origin and a false or misleading description or representation of fact in connection with any product if the use 1) is likely to cause confusion, mistake or deception or 2) misrepresents the nature,

characteristics or qualities of any product in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1).  Section 1125(a) also provides a cause of action for trade dress infringement. 15 U.S.C. § 1125(a)(3).

Vireo moves to dismiss Counts 1, 2 and 4 for lack of jurisdiction because the complaint purportedly refers only to Vireo's anticipated conduct and not to any actual use by Vireo of the trademarks or trade dress.  Vireo avers that those counts do not allege "actual use" as required by §§ 1114(1) and 1125(a) and that, as a result, there is no Article III case or controversy for adjudication.

Vireo proclaims that the complaint does not, and cannot, assert any actual use by Vireo of the contested trademarks or trade dress because

> Vireo has no products on sale using the C-MENT or CON-CRET trademarks or trade dress that could provide ProMera a recovery of damages.  There is no advertising for this Court to enjoin.  There are not even any finalized labels, print advertisements, or commercials for this Court to consider when determining if an infringement has occurred.

Vireo further suggests that

> even if the Court were to consider the case "ripe" due to ProMera's implied allegations of Vireo's purported intent to use, such intent is clearly no longer present in view of Faulkner's express declaration . . . [disclaiming] any present intent [by Vireo] to use the C-MENT or CON-CRET trademarks and ProMera's trade dress.

ProMera responds that it has indeed alleged actual use in commerce in connection with the offering for sale, distribution and advertising of products with the infringing C-MENT trademarks because the complaint asserts that 1) Vireo authorized and required Kaged Muscle to display the C-MENT trademarks on the RE-KAGED product labels, 2) Kaged Muscle actually used the C-MENT trademarks in an online advertisement, 3) Vireo filed and continued to prosecute trademark applications for the C-MENT trademarks and 4) Vireo worked with a label designer to prepare product packaging and labels with the C-MENT trademarks and the yellow and black color scheme.  ProMera argues that Vireo's disclaimers in the Faulkner declaration do not alter the nature of conduct that has already occurred.

The Court agrees with ProMera and finds that Counts 1, 2 and 4 survive dismissal because the complaint sufficiently alleges the actual use by Vireo of the contested trademarks and trade dress in commerce.  Accordingly, the motion to dismiss Counts 1, 2 and 4 for lack of jurisdiction will be denied.

### 2. **Vireo's motion to dismiss for failure to state a claim**

Count 3 of the complaint asserts that Vireo's use of the "identical CON-CRET Trademark in the advertising, promotion, and sale of an identical product, to wit, creatine supplements," constitutes counterfeiting in violation of 15 U.S.C. § 1127.

Vireo responds that the Court should dismiss Count 3 for failure to state a claim because § 1127

> consists entirely of definitions and [sets forth] Congress' intent in providing causes of action and remedies under other sections of this chapter of the Lanham Act. Nowhere does Section 1127 set forth any independent cause of action.

ProMera concedes that its citation to the Lanham Act was "incomplete" but argues that such an error does not warrant dismissal of the claim because the substance of the allegations in the complaint "clearly sets forth a claim for counterfeiting and Vireo is on notice of same."

The Court finds that the omission of the relevant section of the Lanham Act is not grounds for dismissal of the counterfeiting claim, particularly where Vireo simply contests the omission of the specific statutory provision but not the sufficiency of the facts alleged. See Broderick v. PNC Mortg. Corp., 2013 U.S. Dist. LEXIS 38642, at *18 (D. Mass. Mar. 20, 2013)(holding that the nature of asserted claims is determined by the substance, not the form, of the allegations in the complaint and that the misidentification of the proper cause of action is a "mere technicality" if it did not raise concerns over whether the defendant had notice of the nature of the claim).

Accordingly, the motion to dismiss Count 3 for failure to state a claim will be denied.

### III. **Motion to transfer or stay the case**

#### A. **Legal standards**

A district court may transfer a civil action to another district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The court has discretion to adjudicate a motion to transfer based upon an "individualized, case-by-case consideration of convenience and fairness." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009). The party seeking the transfer must show that it is warranted and must overcome the "strong presumption in favor of the plaintiff's choice of forum." Id. at 13. Factors to consider include

> 1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interests at stake.

Momenta Pharm., Inc. v. Amphastar Pharm., Inc., 841 F. Supp. 2d. 514, 522 (D. Mass. 2012).

Moreover, a district court has the inherent power to stay pending litigation when "the efficacious management of court dockets reasonably requires such intervention," unless a statute or rule provides otherwise. Marquis v. F.D.I.C., 965 F.2d 1148, 1154 (1st Cir. 1992). A stay is warranted, for example, if resolution of the issues in another action

> even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending cas[e] and assist in the determination of the questions of law involved.

Taunton Gardens Co. v. Hills, 557 F.2d 877, 879 (1st Cir. 1977)(citing Landis v. North Am. Co., 299 U.S. 248, 253-54 (1936)).  The court may stay a case if 1) there is good cause to do so, 2) the stay is reasonable in duration and 3) it ensures that the competing equities are weighed and balanced. Marquis, 965 F.2d at 1155.

**B. Application**

Vireo seeks to transfer the case in its entirety to the District of Nebraska.  This Court notes that discovery is ongoing in the Nebraska action which Vireo commenced in that District and that this Court recently transferred to the District of Nebraska the trademark claim in the 10595 action, which concerns the rights of the parties to use the CON-CRET and CON-CRET REINFORCED trademarks.

Here, Vireo claims that transfer is warranted because the facts of this case are "inextricably bound together" with the facts of the 10595 and Nebraska actions in light of the observation that all three cases arise out of "the same disputes and failed business relationship."  Vireo declares that

> any alleged infringement of the CON-CRET trademarks are not only related to the parties' earlier complaints in [the 10595 and Nebraska actions] seeking a declaration of rights with respect to the CON-CRET trademarks, but

-13-

> any relief in this case is almost entirely dependent on resolution of the issues in those cases.

Vireo contends that a transfer of this case to the District of Nebraska would promote the fair and efficient administration of justice for that reason and for the reasons set forth in its motion to transfer venue in the 10595 action.

ProMera maintains that a transfer to the District of Nebraska is unwarranted but concedes that adjudication of the trademark claims in this case would require a prior determination of which party owns the rights to the CON-CRET trademarks.  ProMera avers, however, that Vireo could raise the ownership issue in the instant case as an affirmative defense or counterclaim thereby obviating the need for a transfer.  ProMera points out that judicial efficiency would not be served

> by forcing a Massachusetts company to prosecute a trademark case against a Tennessee infringer in a Nebraska courtroom.

ProMera submits that transferring the instant action to Nebraska would increase the cost of litigation and be inconvenient for both parties because there are no relevant documents or witnesses in Nebraska.  It opposes the motion to transfer because, in its view, Vireo's arguments of judicial economy are unsupported and do not overcome ProMera's preference to litigate its action in Massachusetts.

Vireo alternatively suggests that, if the Court declines to transfer this case, it should at least stay the case until the parties resolve their dispute concerning ownership of the CON-CRET trademarks in the 10595 and Nebraska actions.  That is because, according to Vireo, 1) ProMera must show that it owns the CON-CRET trademarks in order for the infringement claims in the instant case to be viable, 2) the declaration by Faulkner that Vireo will not use the C-MENT or CON-CRET trademarks until the ownership issues are resolved ensures that a stay of this case will not prejudice ProMera and 3) the Court has neither authorized the commencement of discovery nor scheduled a trial and thus this case is in the early stages of litigation.

ProMera concedes that resolution of the trademark ownership issue in the 10595 and Nebraska actions would simplify the trademark claims in this case but disputes that it would simplify or be relevant to its trade dress claim.  ProMera insists that a stay is unwarranted because it would be inefficient and inconvenient for everyone.

This Court will decline to transfer the case to Nebraska because, in this case, the interest in judicial efficiency does not overcome the strong presumption in favor of ProMera's choice of forum.  The facts and issues in the 10595 and Nebraska actions are related, but not sufficiently similar, to the facts and issues raised here because this case 1) concerns the use of

the C-MENT trademarks and 2) contains a trade dress claim. Vireo does not deny that there are no relevant documents or witnesses located in Nebraska. The connection between Nebraska and the claims in this action is minimal and transfer is unwarranted.

The Court will, however, stay the case pending resolution of the trademark ownership issue pending in the Nebraska Court. A determination of the ownership rights in the CON-CRET trademarks in the 10595 and Nebraska actions by the Nebraska Court will surely narrow the trademark issues presented here. That constitutes good cause to stay the case in its entirety. The stay will be lifted as soon as the ownership issue is resolved. ProMera does not dispute that the agreement memorialized in the Faulkner declaration ensures that ProMera will suffer no prejudice as a result of any ongoing infringement or threat of infringement by Vireo. The case will thus be stayed.

## ORDER

For the foregoing reasons, defendant's motion to dismiss the complaint or, in the alternatives, to transfer or stay the case (Docket No. 8) is **ALLOWED**, in part, and **DENIED**, in part. The trademark and trade dress claims are neither dismissed nor transferred to the District of Nebraska but the case is hereby stayed in its entirety, until the District Court of the District

of Nebraska resolves the issue with respect to ownership of the CON-CRET trademarks.  The parties will submit status reports to this Court on June 30, 2016 and every six months thereafter.

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated January 14, 2016